UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

LEE BAILEY,

Defendant.

CRIMINAL ACTION NO.
1:24-CR-00398-JPB

## **ORDER**

This matter comes before the Court on United States Magistrate Judge

Lawrence R. Sommerfeld's Report and Recommendation ("R. & R.") [Doc. 62]

regarding Defendant's Motion to Suppress [Doc. 21] and Motion to Dismiss

Indictment [Doc. 22].  This Court finds as follows:

## **BACKGROUND**

Shortly before midnight on August 19, 2024, Atlanta Police Department

Officer Oliver Smith was patrolling southbound on Boulevard in a marked patrol

vehicle.  [Doc. 49, pp. 28, 33, 35].[1]  As he approached the intersection of

Boulevard and Wabash Avenue, an area he knew to be "high crime" with frequent

incidents involving violence, narcotics and prostitution, Officer Smith observed a

crowd of individuals engaged in what appeared to be a physical altercation and

---

[1] The Court uses the page numbers reflected in the CM/ECF designations.

heard yelling through his open patrol car window.  Id. at 28, 30–32, 35–36.
Among the crowd, he observed Defendant, who was dressed in light clothing,
using his left arm to push another individual while holding a black handgun in his
right hand.  Id. at 40–41.

Officer Smith immediately stopped his patrol vehicle in the roadway, exited
without closing the driver's door or activating his emergency lights and drew his
service weapon in a low-ready position, pointing it toward the ground rather than
at Defendant.  [Gov't Ex. 1 at 1:51, 4:10–4:20]; [Doc. 49, pp. 35, 37, 39, 46–50].
He instructed Defendant to stop and drop the firearm.  [Doc. 49, p. 46].  Rather
than comply, Defendant walked away, behind a parked car.  Id. at 35.  Officer
Smith then asked Defendant what he was holding.  [Gov't Ex. 1 at 1:58–2:10].

As Defendant walked between parked vehicles, Officer Smith heard the
sound of something hitting the nearby fence, a sound that is audible in footage
from both Officer Smith's body camera and dashboard camera.  [Doc. 49, p. 40];
[Gov't Ex. 1 at 2:09]; [Gov't Ex. 3 at 1:10].  Officer Smith requested backup,
detained Defendant in handcuffs and secured the area to prevent anyone from
retrieving the firearm.  [Doc. 49, p. 43].  After additional officers arrived, Officer
Smith located the discarded firearm nearby.  [Gov't Ex. 1 at 2:12–3:25]; [Doc. 49,
pp. 42–43; 48].  Approximately ninety-five seconds elapsed between Officer

Smith's exit from his patrol vehicle and his recovery of the firearm.  [Gov't Ex. 1 at 1:50–3:25].

Officer Smith then placed Defendant in the rear seat of his patrol car.  [Doc. 49, p. 51].  Defendant appeared intoxicated, exhibiting slurred speech, emitting an odor of alcohol and walking with an unsteady gait, and he acknowledged he had been drinking.  Id. at 51–52.  While escorting Defendant to the patrol vehicle, Officer Smith remarked that pulling a gun while intoxicated "Ain't going to work, bro."  [Gov't Ex. 1 at 5:24].  Defendant denied ever having drawn a firearm.  Id. at 5:28.  Officer Smith responded that he had personally seen Defendant with a gun and questioned why Defendant had thrown it, to which Defendant replied that he had only been holding a bottle.  Id. at 5:28–5:40.

After placing Defendant in the patrol car, Officer Smith briefed Officer Juan Wilson and another responding officer regarding the events he had observed.  Id. at 6:35–7:30.  He then returned to his patrol vehicle, removed Defendant's driver's license from his wallet and began entering Defendant's information into the onboard computer while seated in the front seat.  Id. at 7:30–9:00.  During this process, Defendant initiated conversation prompting Officer Smith to ask, "So why'd you pull the gun up?"  Id. at 9:04–9:07.  Officer Smith continued entering information into the computer while communicating with another officer by radio

3

and discussing Defendant's criminal history with Officer Wilson through the open passenger-side window.  Id. at 7:30–10:40.  During this period, Defendant requested to use the restroom, but Officer Smith told him he would have to wait.  Id. at 10:41.  Although difficult to discern from the recording, Defendant then stated he was a convicted felon.  Id. at 10:52–10:54.  Officer Smith immediately informed Officer Wilson of Defendant's admission, and Officer Wilson instructed him to continue verifying Defendant's criminal history.  Id. at 11:00–11:08.

On June 26, 2025, Defendant moved to suppress statements made to Officer Smith and tangible evidence recovered at the scene.  [Doc. 21].  He also moved to dismiss the indictment based on a Second Amendment challenge.  [Doc. 22].  The motions were referred to the Magistrate Judge, who conducted an evidentiary hearing and thereafter issued an R. & R. recommending that the motions be denied.  [Doc. 62].  Defendant timely filed objections to the R. & R., [Doc. 64], and the matter is now ripe for the Court's review.

## LEGAL STANDARD

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), courts review any

portion of a report and recommendation subject to a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.

Notably, a party objecting to a recommendation "must specifically identify those findings objected to," and "[f]rivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). Placing this burden on the objecting party "facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009).

## ANALYSIS

In his objections, Defendant argues that: (1) his statements to the officers, including his admission that he is a convicted felon, should be suppressed because the statements were made in response to a "single course of police investigation, by one police officer, in violation of Miranda" and were involuntary; (2) the gun should be suppressed because he "was seized under the meaning of the Fourth Amendment" after Officer Smith pointed his gun toward Defendant in a "low ready position" and ordered him to stop and that Officer Smith otherwise lacked reasonable suspicion for the seizure; and (3) that the indictment should be

dismissed because 18 U.S.C. § 922(g) is unconstitutional as applied to Defendant. [Doc. 64].

## I.  Defendant's First Objection

Defendant objects to the Magistrate Judge's finding that his statements were made spontaneously and voluntarily.  Id. at 1.  Instead, Defendant argues that his statements to Officer Smith should be suppressed because the police initiated a custodial interrogation of him without reading his rights as required by Miranda v. Arizona, 384 U.S. 436 (1966).  He further argues that the statements were not made voluntarily because the officers coerced him into making statements while he was intoxicated.  [Doc. 64, pp. 5–6].  Primarily at issue here is Defendant's statement to Officer Smith that he is a convicted felon.[2]  This Court finds that the Magistrate Judge ruled appropriately.

### A.  Defendant's statement does not trigger Miranda because it was spontaneous.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Indeed,

---

[2] While Defendant seeks to suppress other statements before he received his Miranda warnings, the government has indicated that it only plans to use Defendant's statement about being a convicted felon in its case-in-chief.  [Doc. 59, p. 17].  Accordingly, the R. & R. and Defendant's objections focus mainly on this statement, and the Court will concentrate its analysis on this statement as well.

the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444.  But Miranda "does not require a warning, or otherwise impose restrictions, anytime police speak with someone— even if that someone is a suspect."  Bowen v. Sec'y, Fla. Dep't of Corr., 92 F.4th 1328, 1334 (11th Cir. 2024).  "Instead, its protections apply only in custodial interrogation."  Id.

Here, the government concedes that Defendant was in police custody at the time he made the statement regarding his status as a felon.  [Doc. 59, p. 16]. Therefore, the inquiry before this Court turns on whether Defendant was interrogated at the time he admitted that he was a felon.  The interrogation piece of custodial interrogation includes both "express questioning or its functional equivalent."  R.I. v. Innis, 446 U.S. 291, 300–01 (1980).  Further, interrogation "is more than just 'subtle compulsion.'"  Bowen, 92 F.4th at 1334 (quoting Innis, 446 U.S. at 303).  Whether a police practice amounts to interrogation must be determined in light of Miranda's purpose, which is to "prevent[] government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment."  Ariz. v. Mauro, 481 U.S.

7

520, 529–30 (1987).  By their nature, voluntary and spontaneous comments are not coercive.  Therefore, "[v]oluntary and spontaneous comments by an accused . . . are admissible evidence if the comments were not made in response to government questioning."  Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991); see also Miranda, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.").

While it is true Officer Smith asked Defendant several questions before Defendant admitted he was a convicted felon,[3] a period of time passed between when Officer Smith asked these questions and when Defendant made his admission.  Moreover, Officer Smith did not ask Defendant if he was convicted felon at the time of the admission.  [Gov't Ex. 1 at 10:52–10:54].  Rather, while Officer Smith looked up Defendant's criminal history, Defendant volunteered his conviction status.  Id.  These facts do not indicate that Officer Smith or any other officer used the "coercive nature of confinement to extract confessions that would not be given in an unrestrained environment."  Mauro, 481 U.S. at 530.  Indeed, even after the admission, the officers continued their investigation into his criminal

---

[3] Officer Smith asked, "Why did you throw it?" [Gov't Ex. 1 at 5:28–5:39], and "Why'd you pull the gun up?"  Id. at 9:04–9:07.

record.  [Gov't Ex. 1 at 11:00–11:08].  Therefore, this Court agrees with the Magistrate Judge that this is not a case in which a defendant, in the middle of an interrogation, spontaneously makes additional admissions.  While there were two or three isolated questions earlier that arguably qualified as interrogation, Defendant told Officer Smith that he was a convicted felon without having been asked about his criminal history during a time when the officers were not speaking to him.  Likewise, later questioning after Defendant made his admission cannot convert this spontaneous statement into a response to interrogation.[4]

## B.  Defendant's statement was voluntary.

Defendant also objects to the Magistrate Judge's finding that his statement was voluntary because, in Defendant's view, his statement could not have been voluntary because he was intoxicated and was otherwise experiencing the coercive pressures of being detained in a police car.  [Doc. 64, p. 5].  The government concedes that Defendant was intoxicated when he made the statement, but argues that he was not so affected that his statement should be deemed involuntary.  [Doc. 59, pp. 19–20].

---

[4] Sometime later, while the two were still sitting in the car, Officer Smith asked Defendant why he had a gun if he was a felon, [Gov't Ex. 1 at 15:42], and if he had ever been to prison, id. at 20:10.

9

The government bears the burden to establish, by a preponderance of the evidence, that a challenged confession was voluntary. United States v. Lall, 607 F.3d 1277, 1285 (11th Cir. 2010). The voluntariness of statements is analyzed similarly to the voluntariness of a Miranda waiver. United States v. Chung, No. 13-CR-379, 2016 WL 11432472, at *6 (N.D. Ga. Sep. 12, 2016).

> The standard for evaluating the voluntariness of a confession is whether a person made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him. Voluntariness depends on the totality of the circumstances and must be evaluated on a case-by-case basis.

United States v. Castaneda-Castaneda, 729 F.2d 1360, 1362 (11th Cir. 1984) (citation modified).

Government coercion is typically required to render a statement involuntary. Colorado v. Connelly, 479 U.S. 157, 165, 167 (1986). This coercion often involves circumstances such as subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so or the making of a promise that induces confession. See id. at 163 n.1; see also United States v. Villaverde-Leyva, No. 10-CR-035, 2010 U.S. Dist. LEXIS 139775, at *37 (N.D. Ga. Dec. 8, 2010) ("Among the factors the Court must consider are the defendant's intelligence, the length of his detention, the nature of the interrogation,

the use of any physical force against him, or the use of any promises or inducements by police.").

Other courts in this Circuit have found intoxication an appropriate factor to consider in assessing the voluntariness of a statement. United States v. Harris, 613 F. Supp. 2d 1290, 1301 (S.D. Ala. 2009). However, "intoxication, short of impairment of the will and mind as to make the individual unconscious of the meaning of his words, will not render a statement or confession inadmissible." Parker v. Allen, 565 F.3d 1258, 1280 (11th Cir. 2009) (citation modified). Here, the record as a whole does not show that Defendant was so intoxicated that he failed to comprehend the meaning of his words. Indeed, Defendant was aware he was prohibited from possessing a firearm, could recognize and cooperate with police commands and was able to communicate with police and others at the scene. The record also shows that Defendant was not physically threatened or harmed, nor was he promised anything in exchange for his statements. Accordingly, after a *de novo* review in light of Defendant's objection, this Court agrees with the Magistrate Judge's finding that Defendant's statement about being a convicted felon was voluntary.

Because the Court finds that Defendant's admission was made spontaneously and voluntarily, Defendant's first objection is **OVERRULED**.

11

## II. Defendant's Second Objection

Defendant also objects to the Magistrate Judge's conclusions of facts and law regarding his detention and the resulting seizure of the firearm in this case. [Doc. 64, pp. 6–7].  Specifically, Defendant disagrees with the Magistrate Judge's determination that the firearm was properly seized under the meaning of the Fourth Amendment.

The Fourth Amendment prohibits unreasonable seizures by the government, including unjustified arrests or detentions.  California v. Hodari D., 499 U.S. 621, 623–26 (1991).  An officer may, however, "briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity."  United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing Terry v. Ohio, 392 U.S. 1 (1968)).  Reasonable suspicion requires a lower degree of certainty than probable cause.  The level of suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence," but must be more than an "inchoate and unparticularized suspicion or 'hunch.'"  United States v. Sokolow, 490 U.S. 1, 7 (1989) (citation modified).  Moreover, the "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."  Illinois v. Wardlow, 528 U.S. 119, 125

(2000).  In the context of an investigatory stop, an officer must have "some minimal level of objective justification" taken from the totality of the circumstances.  INS v. Delgado, 466 U.S. 210, 217 (1984).

Importantly, "[a] 'seizure' does not occur every time a police officer interacts with a citizen."  United States v. Knights, 989 F.3d 1281, 1286 (11th Cir. 2021). "Officers are free to approach individuals on the street or in other public places and put questions to them if they are willing to listen."  Id. (citation modified).  In such instances, an officer "need[s] no suspicion because the Fourth Amendment is not implicated."  Id.  As a result, an investigatory stop only occurs when an "officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011) (quoting Terry, 392 U.S. at 19 n.16).  Generally, "[t]he test for whether the officer restrained a citizen's liberty is whether 'a reasonable person would feel free to terminate the encounter.'"  Knights, 989 F.3d at 1286 (quoting Drayton, 536 U.S. at 201).

In the narrower set of cases where a defendant flees upon an officer's "show of authority," the appropriate standard is that a seizure does not occur until an officer uses physical force or the defendant submits to a show of police authority. Hodari D., 499 U.S. at 626–27, 629 (holding that, because the defendant did not

13

comply with an officer's demand to halt, he was not seized until he was tackled and the cocaine he abandoned while running was not the fruit of a seizure); see also Jordan, 635 F.3d at 1186 ("When a suspect flees from the police, he is not submitting to their authority and therefore is not seized.").

In this case, Defendant argues that he was seized before abandoning his firearm when Officer Smith "got out of his police SUV in the middle of the street, pointed his gun toward [Defendant] in a 'low ready position,' and ordered him to stop." [Doc. 64, p. 6]. Defendant further contends that Officer Smith did not have reasonable suspicion or probable cause to seize him at that time. Specifically, Defendant argues that the "Magistrate Judge improperly credit[ed] Officer Smith's in-hearing testimony, when that testimony [was] directly contradicted by the body camera and dash camera video evidence." Id. at 7.

This Court agrees with the Magistrate Judge's conclusion that the seizure of the firearm did not violate Defendant's Fourth Amendment rights because Defendant had not been seized before he tossed the gun, meaning his Fourth Amendment rights were not implicated and the gun was abandoned property. Because Defendant did not acquiesce to Officer Smith's show of authority and instead walked away from Officer Smith until after he had tossed his weapon,

Defendant could not be seized under the Hodari standard before he abandoned the gun.

Nevertheless, even if this Court concluded that Defendant was seized before throwing his weapon, this Court finds that Officer Smith had at least reasonable suspicion justifying the investigative stop.  In assessing Officer Smith's credibility, the Magistrate Judge found that "Officer Smith testified credibly that he stopped and urgently got out of his car upon seeing [Defendant] holding a gun during what appeared to be an altercation."  [Doc. 62, p. 12].  These determinations warrant "considerable deference" from this Court.  See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).  The fact that Officer Smith left his police car in the middle of the street without activating his lights and left the door to his vehicle open corroborates the sense of urgency he felt when he saw Defendant with a gun.  [Gov't Ex. 1 at 1:51, 4:10–4:20]; [Doc. 49, pp. 48–49].  Likewise, Officer Wilson testified during the evidentiary hearing that he could tell from Officer Smith's voice over the radio that there was an "altercation" going on.  [Doc. 49, p. 120].  To be sure, not all of the incident was captured on the body camera or the police dashboard camera.  However, the Magistrate Judge noted that "neither camera shows the full field of view available to Officer Smith."  [Doc. 62 p. 10].  This Court finds that these facts are sufficient to conclude that Officer Smith had at

15

least reasonable suspicion to justify the investigative stop.[5]  As such, even if the firearm was not abandoned property, Officer Smith appropriately seized the firearm.  Accordingly, Defendant's objection is **OVERRULED**.

## III.  Defendant's Third Objection

Finally, Defendant objects to the Magistrate Judge's characterization of his argument seeking dismissal of the indictment in this case under the Second Amendment.  Specifically, Defendant argues that the Magistrate Judge only addressed Defendant's facial challenge, but not his as-applied challenge.  [Doc. 64, p. 8].

### A.  Defendant's facial challenge fails.

In his objections, Defendant concedes that the Eleventh Circuit Court of Appeals has already held that § 922(g)(1) does not violate the Second Amendment with respect to facial challenges but presents the argument to "preserve [his] rights in the event of a future appeal." [Doc. 64, pp. 7–8].  As Defendant correctly noted, the Eleventh Circuit has upheld the constitutionality of § 922(g)(1) in light of

---

[5] These facts also show that Officer Smith may even have had probable cause to arrest Defendant for assault when he saw Defendant hold a gun in the middle of a fight, or for battery when he saw Defendant pushing another person.

recent decisions from the United States Supreme Court.[6]  United States v. Dubois, 139 F.4th 887, 892–94 (11th Cir. 2025).  And because courts in this Circuit are "bound by the precedent of this circuit," this Court agrees with the Magistrate Judge's finding that § 922(g)(1) does not violate the Second Amendment with respect to Defendant's facial challenge.  In re Hubbard, 803 F.3d 1298, 1309 (11th Cir. 2015).

### B.  Defendant's as-applied challenge also fails.

Defendant also raises an as-applied constitutional challenge to the indictment in this case based on the Second Amendment.  [Doc. 64, pp. 7–8].  However, "both before and after Bruen, the [Eleventh] Circuit applied Rozier to reject Second Amendment challenges, interpreting it as foreclosing as-applied challenges to the constitutionality of § 922(g)(1)."  United States v. Pierre, No. 23-11604, 2025 WL 1721074, at *1 n.1 (11th Cir. June 20, 2025).  Therefore, this Court finds that Defendant's as-applied argument is ultimately unsuccessful.  Accordingly, Defendant's third objection is **OVERRULED**.

---

[6] These cases include New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), and United States v. Rahimi, 602 U.S. 680 (2024).

**CONCLUSION**

For the foregoing reasons, the R. & R. [Doc. 62] is **ADOPTED** as the order of the Court. Defendant's objections to the R. & R. [Doc. 64] are **OVERRULED**, and his Motion to Suppress [Doc. 21] and Motion to Dismiss Indictment [Doc. 22] are **DENIED**.

Defendant is hereby **ORDERED** to notify the Court within fifteen days of the entry of this Order as to whether he will proceed to trial or enter a guilty plea. The Clerk is **DIRECTED** to submit this order at the end of the applicable time period or when a written response is filed, whichever is earlier. It is further **ORDERED** that the time between the date of this order and when the Clerk resubmits this order for review shall be excluded from the Speedy Trial Act calculations. The Court finds that the delay is for good cause and the interests of justice outweigh the right of the public and the right of Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A).

**SO ORDERED** this 27th day of July, 2026.

_____
J. P. BOULEE
United States District Judge

18